IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JENNIFER MAGONI-DETWILER     :     CIVIL ACTION
                             :     NO. 06-4904
        Plaintiff,           :
                             :
    v.                       :
                             :
COMMONWEALTH OF PENNSYLVANIA, :
et al.,                      :
                             :
        Defendants.          :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                        August 22, 2007

        Before the Court is defendants' motion to dismiss
plaintiff's amended complaint (doc. no. 15).  For the reasons set
forth below, the Court finds that, under the teachings of the
recent Supreme Court decision in Exxon Mobil Corp. v. Saudi Basic
Industries Corp., 544 U.S. 280, 283 (2005), the Rooker-Feldman
doctrine does not deprive the Court of jurisdiction to entertain
plaintiff's due process claim.  However, this victory is short-
lived.  Because the Court finds that under Pennsylvania law
Plaintiff is precluded from re-litigating her due process claim
by the principle of issue preclusion, the Court will dismiss the
amended complaint.


**I.    BACKGROUND**

        The facts, as taken in the light most favorable to the
plaintiff, are as follows.  Plaintiff, Jennifer Magoni-Detwiler,

worked for Nozak Enterprises, Inc. d/b/a Supercuts ("Nozak") as a salon stylist and manager for over five years.  On May 7, 2005, Nozak terminated Magoni-Detwiler after Nozak requested that Magoni-Detwiler sign a non-competition clause, which Magoni-Detwiler refused to do.

Magoni-Detwiler then applied for unemployment compensation ("UC") benefits.  The UC Service Center denied her application.  She appealed.  She then started regularly calling the UC Service Center, inquiring when the hearing on her appeal would take place.  Each time she telephoned, the Service Center advised her that she would receive written notice of the hearing in the mail.  During a telephone conversation in the first week of July 2005, realizing something was amiss, the Service Center directed Magoni-Detwiler to the Referee's office.  The Referee's office advised that the hearing had already taken place in late June and that the request for UC had been denied at the hearing.[1]

Magoni-Detwiler appealed the Referee's decision, arguing that she never received notice of the hearing.  The UC Board of Review ordered that the matter be remanded to the Referee for a second hearing as to, inter alia, whether

---

[1]     Nozak also never appeared for the hearing, ostensibly because it also never received notice of it.  Magoni-Detwiler represented during oral argument that a subpoena directed at Nozak revealed that Nozak also had no record of receiving notice of the hearing.

Magoni-Detwiler received notice of the first hearing.  According to Magoni-Detwiler, she diligently called many times to inquire when her second hearing would take place.  Yet again, without her ever receiving notice, the Referee's office held a second hearing in September 2005 without Magoni-Detwiler's presence.  At this second hearing, the Referee ruled that Magoni-Detwiler had received notice of the first hearing and again denied her UC claim.

Magoni-Detwiler appealed again.  This time, the UC Board of Review affirmed the Referee's decision.  Magoni-Detwiler filed a request for reconsideration, which the Board also denied.  Magoni-Detwiler then filed a timely Petition for Review with the Commonwealth Court.  As part of that petition, Magoni-Detwiler asserted a new claim: that her state due process rights were violated as a result of the Referee's failure to provide notice of her hearings.[2]

On May 3, 2006, after extensive briefing, the Commonwealth Court affirmed the UC Board of Review.  It explained that the record before it included evidence that notice had been mailed to Magoni-Detwiler, and "[w]here notice, mailed to a

---

[2]  The Commonwealth Court's scope of review on an appeal from a UC Board of Review "is limited to determining whether constitutional rights have been violated, whether an error of law has been committed or whether  any necessary findings of fact are not supported by substantial evidence in the record."  Lock Haven Univ. of State Sys. Higher Educ. v. Unempl't Comp. Bd. of Rev., 559 A.2d 1015, 1017 (Pa. Commw. Ct. 1989).

party's last known address, is not returned by the postal authorities as undeliverable, the party is presumed to have received timely notice." Magoni-Detwiler v. Unempl't Comp. Bd. of Rev., No. 2348 C.D. 2005, at 4 (Pa. Commw. May 3, 2006) ("Comm. Mem.") (citing John Kenneth, Ltd. v. Unempl't Comp. Bd. of Rev., 444 A.2d 824, 826 (Pa. Commw. 1982)).[3]  Magoni-Detwiler filed a petition for allowance of appeal to the Pennsylvania Supreme Court.  On October 3, 2006, the Pennsylvania Supreme Court denied her petition.

Magoni-Detwiler filed the instant suit on November 11, 2006.  She asserts a single claim: Defendants[4] deprived her of her Fourteenth Amendment rights to procedural due process by failing to provide notice of the hearings before the UC Referee. Magoni-Detwiler seeks a judgment ordering the defendants to schedule an unemployment compensation hearing regarding her claims for UC benefits, costs, and attorney's fees.

---

[3]    Magoni-Detwiler's amended complaint includes allegations regarding her Petition for Review with the Commonwealth Court, the Commonwealth Court's decision to affirm the Board's order, and the subsequent denial of her appeal with the Pennsylvania Supreme Court.  See Amend. Compl. ¶¶ 47-50. Those proceedings, including the Pennsylvania Commonwealth Court's Memorandum, have been made a part of the record in this case.

[4]    The named defendants include the members of the UC Board of Review, a UC claims administrator, and the Pennsylvania Secretary of Labor and Industry.

## II. DEFENDANTS' MOTION TO DISMISS

Defendants move to dismiss Magoni-Detwiler's amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[5] They advance two arguments in support of their motion: (1) that the Rooker-Feldman doctrine bars Magoni-Detwiler's procedural due process claim by depriving this Court of jurisdiction to entertain it; and (2) that the principles of res judicata, or claim preclusion, and collateral estoppel, or issue preclusion, bar Magoni-Detwiler from litigating a claim that has already been adjudicated against her in a separate proceeding.

A.   The Rooker-Feldman Doctrine

1.   Legal Standard

The Rooker-Feldman doctrine holds that a federal district court does not have jurisdiction to act as an appellate court and review a state court judgment.  The doctrine derives from the Supreme Court's opinions in Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16 (1923) (holding that federal district court did not have jurisdiction over action in which plaintiffs

---

[5]     Defendants first filed a motion to dismiss raising these arguments on March 9, 2007 (doc. no. 3).  The Court held a hearing on that motion on April 11, 2007, after which it ordered that the parties file supplemental briefing in light of Magoni-Detwiler's producing the proceedings before the Commonwealth Court (doc. no. 10).

alleged that an adverse state-court judgment was unconstitutional and asked that it be declared "null and void"), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 483-84 (1983) (holding that federal district court did not have jurisdiction over action seeking to reverse a District of Columbia court for refusing to waive a rule requiring bar applicants to have graduated from an accredited law school).  In both cases, the Supreme Court emphasized that the appropriate avenue for plaintiffs complaining of a wrongfully decided state-court judgment was to appeal their adverse judgments to the highest state court, after which time the United States Supreme Court would have jurisdiction "to reverse or modify" the state-court judgment.[6]  Rooker, 263 U.S. at 415-17; Feldman, 460 U.S. at 476.

In the ensuing years, the doctrine was "construed to extend far beyond the contours of the Rooker and Feldman cases, overriding Congress's conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts."  Exxon Mobil, 544 U.S. at 283.  This was the case with the Third Circuit's decision in Exxon Mobil.  There, a Saudi company sued Exxon Mobil in state court.  Id. at 289.  Two weeks later, Exxon

---

[6]     Federal appellate jurisdiction to reverse or modify a state court judgment is lodged, initially by § 25 of the Judiciary Act of 1789, 1 Stat. 85, and now by 28 U.S.C. § 1257, exclusively in the United States Supreme Court.  Exxon Mobil, 544 U.S. at 283.

Mobil sued the Saudi company - over the same dispute - in federal court.  Id.  The state action went to trial first, and a verdict was returned in favor of Exxon Mobil.  Id.  While the state verdict was on appeal, the federal district court denied a motion to dismiss filed by the Saudi Company.  The Saudi company took an interlocutory appeal to the Third Circuit.  Then, on its own motion, the Third Circuit raised the question whether "subject matter jurisdiction over this case fails under the Rooker-Feldman doctrine because Exxon[ ]Mobil's claims have already been litigated in state court."  Id. (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 364 F.3d 102, 104 (3d Cir. 2004)).[7] The Third Circuit believed the answer to be yes: subject matter jurisdiction failed.  The only relevant consideration, it stated, "is whether the state judgment precedes a federal judgment on the same claims."  Id. at 290 (quoting Exxon Mobil, 364 F.3d at 105). To hold otherwise, the Third Circuit worried, "would be encouraging parties to maintain federal actions as 'insurance policies' while their state court claims were pending."  Id.

        The Supreme Court reversed, stating "Rooker-Feldman is not triggered simply by the entry of judgment in state court."

_____

        [7]     Although Exxon Mobil had prevailed in the state action, the Third Circuit hypothesized that, if the Saudi company won on appeal in the state action, Exxon Mobil would then be endeavoring in the federal action to "invalidate" the state court judgment, "the very situation" barred by Rooker-Feldman.  Exxon Mobil, 364 F.3d at 106.

Id.  Rather, it "is confined to cases of the kind from which the
doctrine acquired its name: cases brought by state-court losers
complaining of injuries caused by state-court judgments rendered
before the district court proceedings commenced and inviting
district court review and rejection of those judgments." Id. at
284.  The Supreme Court distinguished Rooker-Feldman, which is an
issue of jurisdiction, from the separate principles of collateral
estoppel and res judicata, which are issues of preclusion.  It
explained that a federal court is not barred from "exercising
subject-matter jurisdiction simply because a party attempts to
litigate in federal court a matter previously litigated in state
court." Id. at 293.  Rather, "[i]f a federal plaintiff
present[s] some independent claim, albeit one that denies a legal
conclusion that a state court has reached in a case to which he
was a party . . ., then there is jurisdiction and state law
determines whether the defendant prevails under principles of
preclusion." Id. (internal quotation omitted).

        The instant case well illustrates the distinction
between the objectives of the Rooker-Feldman doctrine and
preclusion principles grounded in state law.  Rooker-Feldman
clarifies federal jurisdiction in a federalist system where
state and federal courts operate simultaneously and side by side.
Preclusion principles, on the other hand, promote the finality of
judgments, fostering judicial economy, predictability, and

8

freedom from the harassment of multiple lawsuits.  In the instant dispute, while the Court finds that Rooker-Feldman poses no obstacle to Magoni-Detwiler's federal action, it finds that defendants must prevail under principles of preclusion.

      2.   Application

      Rooker-Feldman is inapplicable here.  Magoni-Detwiler does not allege that her injuries were "caused by the state court judgment."  Her injuries preceded the Commonwealth Court's ruling.  They occurred when the Referee failed, twice, to provide her notice of the upcoming hearings.[8]  Although Magoni-Detwiler challenged this failure in the Commonwealth Court on the ground that her state due process rights were violated, under Exxon-Mobil, "a district court is not divested of subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in a state court." Turner v. Crawford Square Apartments III, L.P., 449 F.3d 542, 547 (3d Cir. 2006).

      The Third Circuit has had at least two occasions to apply this same principle in a post Exxon Mobil context.  In

---

[8]    The decisions of the UC Referee and Board of Review do not constitute the decision of a state court, and thus the Rooker-Feldman doctrine does not apply to those decisions.  See Verizon Md., Inc. v. PSC, 535 U.S. 635, 644 n.3 (2002) ("The doctrine has no application to judicial review of executive action, including determinations made by a state administrative agency.")

Turner, an apartment complex evicted a disabled tenant who failed
to pay her rent.  Id. at 544.  While the eviction action was
still pending in state court, the tenant obtained section 8
rental assistance vouchers due to her disability.  Id.  She
proffered a section 8 voucher to the apartment complex, which
rejected it as the tenant had been habitually late in paying rent
and the apartment complex still wanted to evict her.  Id.  After
a trial, the state court found for the apartment complex and
evicted the tenant.  Id.

The tenant then filed an action in federal court
alleging that the apartment complex violated the Fair Housing Act
("FHA") by evicting her because of her disability.  Id. at 546.[9]
The district court dismissed the tenant's case, citing the
Rooker-Feldman doctrine.  Id.  The Third Circuit reversed.  Id.
The tenant's action in the district court did not complain of
injuries "caused by the state court judgment."  Id.  Rather, her
complaint "raised federal claims, grounded on the FHA, not caused
by the state-court judgment but instead attributable to [the

---

[9]     Defendants contend that Magoni-Detwiler should have
filed the instant suit while her state claim was still pending to
avoid the Rooker-Feldman doctrine.  However, in Turner, the Third
Circuit found no fault with the tenant's waiting until the
completion of her state court proceedings before she initiated
her federal action.  449 F.3d at 547; see also Exxon Mobil, 544
U.S. at 293 ("[A] federal court may be bound to recognize the
claim- and issue-preclusive effects of a state-court judgment,
but federal jurisdiction over an action does not terminate
automatically on the entry of judgment in the state court.").
Thus, this argument has no merit.

apartment complex's] alleged FHA violations that preceded the

state-court judgment":

> Though [the tenant's] district court complaint
> undoubtedly overlaps her adjudicated state-court
> claims, and is based on the same operative facts, this
> overlap does not mean that the Rooker-Feldman doctrine
> is applicable here.  As the Court explained in Exxon
> Mobil, a district court is not divested of
> subject-matter jurisdiction simply because a party
> attempts to litigate in federal court a matter
> previously litigated in state
> court.

Id. at 547.

The Third Circuit's holding in a more recent, albeit

unpublished decision, is equally instructive.  See Rose v. City

of Allentown, 211 Fed. App'x 133 (3d Cir. 2007).  In Rose, the

plaintiff requested a variance from a city's zoning ordinances.

Id. at 135.  The Zoning Board denied the plaintiff's request.

Id.  The plaintiff appealed to the court of common pleas, where

he asserted that the Zoning Board denied the plaintiff his First

Amendment right to free speech and his Fourteenth Amendment right

to equal protection under the law.  Id.  The court of common

pleas denied the plaintiff's claims, and the Commonwealth Court

affirmed.  Id.  During the pendency of the plaintiff's appeal

before the Pennsylvania Supreme Court, however, he filed a

federal complaint that raised First and Fourteenth Amendment

claims identical to his claims in state court.  Id.  The federal

district court dismissed the case on Rooker-Feldman grounds.  Id.

at 136.  The Third Circuit reversed:

11

> [T]he District Court erred in dismissing Rose's . . .
> complaint by applying the Rooker-Feldman doctrine . . .
> . Rose's first federal complaint did not complain of
> injuries caused by a state-court judgment.  Rather,
> Rose's first federal complaint arose out of the
> variance request process before the Zoning Hearing
> Board beginning in 1999.  Thus, Rose's claims in the
> first federal complaint were not caused by a
> state-court judgment, but, rather, were attributable to
> the Defendants' alleged actions that preceded any
> state-court judgment.

Id. at 137.

As in Turner and Rose, Magoni-Detwiler's injury - the UC Referee's failure to provide notice - is caused by incidents that preceded the state court's judgment, and thus is not caused by the state-court judgment itself.  That her state due process claim overlaps her federal due process claim is no basis for dismissing her action under Rooker-Feldman.  Indeed, in Rose, the plaintiff's claims in her state and federal actions were identical, and yet the Third Circuit found that the district court had jurisdiction to hear her claims.

Thus, the Court finds that Rooker-Feldman does not bar the Court from entertaining jurisdiction over this case.


B.    Preclusion Principles

Defendants also contend that the doctrines of collateral estoppel (issue preclusion) and res judicata (claim preclusion) preclude Magoni-Detwiler from asserting her due process claim in a federal district court.  Under the Full Faith

12

and Credit Act, 28 U.S.C. § 1738, federal courts must "give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged."  Baker ex rel. Thomas v. GMC, 522 U.S. 222, 246 (1998) (quotation omitted).  "Congress has directed federal courts to look principally to state law in deciding what effect to give state-court judgments."  See Lance v. Dennis, 546 U.S. 459, __, 126 S.Ct. 1198, 1202 (2006).  Thus, in determining the applicability of claim preclusion and issue preclusion, the Court looks to the law of Pennsylvania.

Claim preclusion and issue preclusion are related, but distinct, concepts.  Whereas claim preclusion prevents a party from re-litigating claims she might have but did not assert in the first action, issue preclusion forecloses only a matter actually litigated and essential to the decision.  Gregory v. Chehi, 843 F.2d 111, 116 (3d Cir. 1988) (citing Duquesne Light Co. v. Pittsburgh Rys., 194 A.2d 319, 321 (Pa. 1963)).  Both claim and issue preclusion serve the same policy goals of conservation of judicial resources, fostering reliance on judicial action, and avoidance of the expense and vexation accompanying multiple lawsuits.  See EEOC v. U.S. Steel Corp., 921 F.2d 489, 492 (3d Cir. 1990) (internal citation omitted).

1.    Issue Preclusion

13

Under Pennsylvania law, collateral estoppel, or issue preclusion, applies when the following four elements are met: (1) the issue decided in the previous action must be identical to one presented in the later action; (2) the previous action resulted in a final judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party to the previous action, or is in privity with a party to the previous action; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the previous action.  Jones v. UPS, 214 F.3d 402, 405-06 (3d Cir. 2000) (citing Rue v. K-Mart Corp., 713 A.2d 82, 84 (Pa. 1998)). Defendants, as the parties seeking to effectuate an estoppel, have the burden of demonstrating the propriety of its application.  Chisholm v. Def. Logistics Agency, 656 F.2d 42, 50 (3d Cir. 1981).[10]

Here, it is clear that the first three requirements have been met.  First, the issue decided by the Commonwealth Court is identical to the one presented in the instant action, namely, whether Magoni-Detwiler received notice of her hearings

---

[10]     Magoni-Detwiler points out that collateral estoppel does not apply to findings made in an unemployment compensation context.  Swineford v. Snyder Cty., 15 F.3d 1258 (3d Cir. 1994); Rue, 713 A.2d at 86-87.  While this may be true, for the purposes of preclusion analysis, the Court is not concerned with the findings of the UC Referee or Board of Review.  Rather, the Court is focused only on the findings of Commonwealth Court, whose findings and judgment may have preclusive effect.

before the UC Referee.[11]  Second, the previous action resulted in

a final judgment on the merits, and indeed, was appealed all to

the way to the Pennsylvania Supreme Court.  Third, Magoni-

Detwiler is the same plaintiff in the present action as in the

prior action.

The only issue that warrants serious consideration is

whether Magoni-Detwiler had a full and fair opportunity to

litigate the issue of whether she received notice in state court.

The "full and fair opportunity to litigate" requirement is

generally met only if the procedures involved in the earlier

proceedings complied with the federal due process clause of the

Fourteenth Amendment.  See Kremer v. Chemical Constr. Corp., 456

U.S. 461, 483 n.24 (1982) ("[W]hat a full and fair opportunity to

litigate entails is the procedural requirements of due

process.").  "Redetermination of issues is warranted if there is

reason to doubt the quality, extensiveness, or fairness of

procedures followed in prior litigation."  Id. at 883 (quoting

Montana v. United States, 440 U.S. 147, 164 n.11 (1979)).  "A

State may not grant preclusive effect in its own courts to a

---

[11]      Not only the issue, but the claim too is identical.  A
due process claim brought under the Pennsylvania Constitution is
indistinguishable from a due process claim brought under the
Fourteenth Amendment of the United States Constitution: the same
analysis applies to both.  Robbins v. Cumberland Cty. Children &
Youth Servs., 802 A.2d 1239, 1252 (Pa. Commw. Ct. 2002) (citing
Pa. Game Comm'n v. Marich, 666 A.2d 253, 255 n.6 (Pa. 1995)); see
also Kaehley v. City of Pitt., 988 F. Supp. 888, 891 n.1 (W.D.
Pa. 1997).

constitutionally infirm judgment, and other state and federal courts are not required to accord full faith and credit to such a judgment." Id.

The Supreme Court has repeatedly stated that "[t]he core of due process is the right to notice and a meaningful opportunity to be heard." LaChance v. Erickson, 522 U.S. 262, 266 (1998). Although, "[t]he exact process required [to satisfy the requirements of due process] varies with the demands of the particular situation in question," the Third Circuit has identified the following as elements of due process: (1) notice; (2) a neutral arbiter; (3) an opportunity to make an oral presentation; (4) a means of presenting evidence; (5) an opportunity to cross-examine witnesses or to respond to written evidence; (6) the right to be represented by counsel; and (7) a decision based on the record with a statement of reasons for the result. Rogin v. Bensalem Twp., 616 F.2d 680, 694 (3d Cir. 1980).

A review of the proceedings before the Commonwealth Court shows that Magoni-Detwiler had a meaningful opportunity to litigate the issue of whether she received notice that included the essential elements of due process. She was on notice of the proceedings before the Commonwealth Court. The Commonwealth Court was a neutral arbiter. She was represented by able counsel. She submitted extensive briefing to the Commonwealth

Court in which she was able to present and respond to evidence.
Indeed, Magoni-Detwiler's briefing attached evidence that
supported her allegations that she diligently pursued her UC
claim, fastidiously telephoned the UC center to obtain her
hearing dates, wrote letters to the Bureau of Compensation and
Board of Review regarding her desire to present her case, and
yet, perplexingly, never received notice of her hearing.  The
briefing made specific reference to the documents that supported
Magoni-Detwiler's claim.[12]  She received a decision based on the
record with a statement of reasons for the result.  After
reviewing all of this evidence, however, the Commonwealth Court

_____

[12]     Magoni-Detwiler argues she did not have a full and fair
opportunity because "the Commonwealth Court did not have original
jurisdiction over the case, [and thus she] could not submit any
additional evidence on the issue of notice" to the Commonwealth
Court.  Pl.'s Brf. at 14 (citing Lock Haven, 559 A.2d at 1018
(Pa. Commw. Ct. 1989)).  She claims that, had she been able, she
would have submitted additional evidence for the Commonwealth
Court's consideration.  Specifically, Magoni-Detwiler states that
she would have submitted evidence: (1) that her former employer
also did not receive notice of the hearing; (2) that the
Referee's office may have a history of failing to mail notices
that they generate; and (3) that, through her own sworn
testimony, she in fact never received notice.  Magoni-Detwiler
reads too much into Lock Haven.  In that case, the Pennsylvania
Commonwealth Court stated only that it was improper for a UC
claimant to present documents to the UC Board of Review that had
not previously been presented to the UC Referee.  See id.

        In any event, the Court need not decide whether Magoni-
Detwiler was barred from submitting additional documents to the
Commonwealth Court, because it appears that she did.  For
example, she attached to her brief to the Commonwealth Court a
letter that was written after the second hearing before the UC
Referee.

wrote a seven-page opinion in which it concluded, inter alia, that Magoni-Detwiler had received notice and thus her "argument that she was denied due process is without merit."  Comm. Mem. at 5.  Although it does not appear that any oral argument took place before the Commonwealth Court issued its opinion, given that Magoni-Detwiler was afforded an opportunity to make written submissions to the Commonwealth Court, the lack of oral argument did not violate due process.[13]  See NLRB v. Int'l Assoc. of Heat & Frost Insulators & Asbestos Workers, 476 F.2d 275, 276 (3d Cir. 1973) ("[W]e are unwilling to say that a denial of oral argument pursuant to our Local Rule constitutes a violation of [due process].") (citing FCC v. WJR, Goodwill Station, Inc., 337 U.S. 265, 276 (1949) (holding that due process does not require oral argument, and written submissions may be sufficient)).  Finally, Magoni-Detwiler was also able to petition for allowance of appeal to the Pennsylvania Supreme Court.

While Magoni-Detwiler's predicament may be unfortunate,[14] she received a full and fair opportunity to

---

[13]    The Commonwealth Court's Internal Operating Procedures provide for "an evidentiary hearing or argument" of an appellate matter where a case "merits or requires" one.  See Pa. Comm. Ct. I.O.P. § 222.  However, oral argument is "permitted only to the extent necessary to enable the appellate court to acquire an understanding of the issues presented."  Pa. R. App. P. § 2315.

[14]    Magoni-Detwiler argues at length that the Commonwealth Court incorrectly applied the presumption of regularity to her case.  This Court makes no indication that the Commonwealth Court correctly decided Magoni-Detwiler's due process claim.  However,

present the issue that she never received notice to the
Commonwealth Court.  With all four elements of issue preclusion
being met, the law precludes Magoni-Detwiler from re-litigating
the issue of notice.  Indeed, she is in a very similar position
to the plaintiffs in <u>Turner</u> and <u>Rose</u>.  In both of those cases,
after the Third Circuit found that the plaintiffs' claims were
not barred by <u>Rooker-Feldman</u>, it found that their claims were
barred by principles of claim preclusion.  <u>See</u> <u>Turner</u>, 449 F.3d
at 549; <u>Rose</u>, 211 Fed. App'x at 139.

        This decision is also consistent with the purposes
underlying the two preclusion principles.  As the Third Circuit
explained in <u>Turner</u>, "the purpose of [preclusion] is to relieve
the parties of the cost and vexation of multiple lawsuits,
conserve judicial resources, prevent inconsistent decisions, and
encourage reliance on adjudications."  449 F.3d at 550.
Application of issue preclusion in this action best serves these
purposes.


        2.   <u>Claim Preclusion</u>

        Defendants also argue that Magoni-Detwiler's due
process claim is barred by the principle of claim preclusion.

_____

to the extent she asks this Court to reverse the Commonwealth
Court's ruling on the merits, the Court must reject such an
appeal as clearly in violation of the <u>Rooker-Feldman</u> doctrine.

Because the Court determines that Magoni-Detwiler's due process claim is barred by issue preclusion, it is not necessary to reach the issue of whether it is also barred by claim preclusion.

## III. CONCLUSION

For the reasons set forth above, the <u>Rooker-Feldman</u> doctrine does not deprive the Court of jurisdiction to entertain Magoni-Detwiler's due process claim against the defendants, notwithstanding the fact that she has already presented this same claim to the Commonwealth Court.  On the other hand, because she had a full and fair opportunity to present to the Commonwealth Court the issue that she never received notice, Magoni-Detwiler is precluded from arguing in this action that she never received such notice.  Finally, because she is precluded from claiming that she never received notice, Magoni-Detwiler's federal due process claim - premised on the allegation that she never received notice - also fails.

An appropriate order dismissing this case follows below.

20

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JENNIFER MAGONI-DETWILER      :      CIVIL ACTION
                              :      NO. 06-4904
          Plaintiff,          :
                              :
     v.                       :
                              :
COMMONWEALTH OF PENNSYLVANIA,  :
et al.,                       :
                              :
          Defendants.         :

## O R D E R

          **AND NOW**, this **22nd** day of **August, 2007,** it is hereby

**ORDERED** that Defendants' Motion to Dismiss Plaintiff's Amended

Complaint (doc. no. 15) is **GRANTED.**

          It is **FURTHER ORDERED** that the case shall be marked

**CLOSED.**

          **AND IT IS SO ORDERED.**

                               S/Eduardo C. Robreno
                              **EDUARDO C. ROBRENO, J.**

21